[Civ. No. 2787.  Third Appellate District.—June 24, 1924.]

W. H. SMITH et al., Appellants, v. HALLWOOD IRRI-
GATION COMPANY (a Corporation), Respondent.

[1] WATERS AND WATER RIGHTS — MUTUAL WATER COMPANY—STOCK
APPURTENANT TO LAND—EVIDENCE—FINDING.—In this proceeding
in *mandamus* to compel defendant, a mutual water company, to
furnish water for the irrigation of the lands of plaintiffs, the evi-
dence justified the finding of the trial court that the stock in said
company owned and held by plaintiffs' predecessor did not become
appurtenant to the lands conveyed by the latter to plaintiffs; and,
therefore, the conveyance to plaintiffs of a portion of the lands
on which their grantor had used water from said water company
for irrigation purposes, unaccompanied by a transfer of any of the
stock held by said grantor, did not carry with it the right to
water from said water company for irrigation purposes which said
grantor possessed by virtue of his ownership of said stock.

[2] ID. — PERMISSIVE USER—TIME—PRESCRIPTIVE RIGHT.—The use of
water from defendant water company by plaintiffs' predecessor
having been permissive, and not hostile or adverse, and the area
irrigated not having been confined for a period of five years to
the lands conveyed to plaintiffs, they acquired no prescriptive
right to the use of water from defendant water company.

[3] ID.—RESTRICTION OF WATER RIGHT—AMENDMENT OF BY-LAWS AND
ARTICLES OF INCORPORATION — CONTRACT OF STOCKHOLDERS.—Con-
ceding that plaintiffs' grantor by reason of his ownership of stock
in defendant water company, was originally seized of a water right
which was appurtenant to his entire tract of land, notwithstanding
he held more than twice as many acres of land as he had shares
of stock, when he voted for the amendment of the articles of in-
corporation and the by-laws of the water company to provide, in
effect, that the stock (and the right to water evidenced thereby)
should be made appurtenant to the specific lands for which they
were issued, one share of stock to each acre of land, he thereby
entered into a contract with his fellow-stockholders and the corpo-
ration to the effect that his water right should be subject to the
limitations and conditions set forth in the amended by-laws and
articles of incorporation.  (Opinion of supreme court on denial of
hearing.)

1.  See 15 R. C. L. 476.
2.  See 27 R. C. L. 1292.
3.  See 6 Cal. Jur. 710, 719; 7 R. C. L. 143, 148.

[4] ID.—VALID CONTRACT—CONSIDERATION—ESTOPPEL OF SUCCESSORS.—
Such agreement thus changing and restricting the water rights pos-
sessed by plaintiffs' grantor and his fellow-stockholders was not
unreasonable or against public policy, and the like agreement of his
fellow-stockholders constituted a sufficient consideration to support
such contract on the part of said grantor; and such agreement
was binding upon his successors in interest and privies, and they
are estopped to claim the benefits of section 552 of the Civil Code
except upon the performance of the conditions of said contract.
(Opinion of the supreme court on denial of hearing.)

(1) 40 **Cyc.**, p. 835 (Anno.).   (2) 40 **Cyc.**, pp. 696, 698.   (3) 40
**Cyc.**, p. 833 (Anno.).   (4) 40 **Cyc.**, p. 833 (Anno.).

APPEAL from a judgment of the Superior Court of Yuba
County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. A. Latta and Elliott & Atkinson for Appellants.

Richard Belcher for Respondent.

FINCH, P. J.—Petitioners applied to the trial court for
a writ of mandate to compel defendant to furnish water for
irrigation of their lands. Judgment was rendered in favor
of defendant and petitioners have appealed.

The defendant company was incorporated in February,
1910, with an authorized capital stock of 5,000 shares. Its
purposes, as set forth in the articles of incorporation, were
very broad and indicated an intention to supply water to
the public generally, but it is admitted that at all times it
conducted its business as a mutual water company, furnish-
ing water to its stockholders only, and permitting them to
apply the water to all or any part of their lands as they
saw fit, no steps being taken to make the water stock appur-
tenant to the land upon which the water was used. Prior
to October 16, 1913, it issued 4,079 shares of its capital stock,
of which 265 shares were issued to W. D. Smith, the grantor
of plaintiff, who owned 550 acres of land under defendant's
canal; 250 shares thereof being issued to him October 25,
1910, and fifteen shares June 23, 1911. October 16, 1913,
by amended articles of incorporation, the purposes of the
company were limited to supplying water to its stockhold-

4. See 6 **Cal. Jur.** 109; 6 **R. C. L.** 707.

ers, "based upon the number of shares of stock held by each
person." The original by-laws did not designate the terri-
tory to be supplied with water or specify whether water was
to be furnished to stockholders only or to the public gen-
erally. Neither was there any provision making the right
to the use of water appurtenant to the lands to be irrigated.
The by-laws provided: "Shares of the corporation may be
transferred at any time by the holders thereof or by attor-
ney legally constituted or by their legal representatives by
endorsement on the certificate of stock. But no transfer
shall be valid until the surrender of the certificate and the
acknowledgment of such transfer on the books of the com-
pany." At the time the articles of incorporation were
amended the by-laws were also amended to provide: "The
water owned, controlled or developed by this company shall
be sold or disposed of for use on the following described
lands. (Here follows a description of an area which in-
cludes the Smith lands.) And said water shall be dis-
tributed only to stockholders of this corporation. Rights of
stockholders to the water distributed by this corporation
shall be evidenced by certificates of stock issued to such
stockholders. Said stock shall be issued only to owners of
the lands or portions of the lands hereinabove described and
in proportion to their holdings, one share for each acre of
said lands owned by stockholder. Said shares so issued shall
be appurtenant to the lands for which they are issued, one
share to each acre thereof, which lands shall be described
in the certificate evidencing such shares, and shares of stock
shall be transferable only with said lands and shall pass as
appurtenant thereto. . . . The stockholders will pay to the
company such assessments as shall be levied by it. . . . The
said water shall be used to irrigate the land described in the
certificate of stock, for domestic purposes incidental thereto,
and for no other purposes whatever. . . . The water to which
the purchaser of said shares of stock is entitled and the
water thereby made appurtenant to said land, shall be an
equal pro rata proportion of all the water available for the
irrigation of all lands covered by such stock." This amend-
ment was unanimously adopted at a duly called meeting of
the stockholders at which the owners of 3,598 shares of the
capital stock were present, in person or by proxy. Smith
was not personally present at the meeting but was repre-
sented by his proxy. A certified copy of the amendment

was duly recorded in the office of the county recorder on the 8th of November, 1913. It does not appear whether other stockholders complied with the provisions of the foregoing amendments, but Smith did not comply therewith. In a written communication to defendant, dated April 27, 1914, he stated:

"In accordance with law and the by-laws of Hallwood Irrigation Company, I hereby locate upon and make appurtenant to the lands owned by me . . . the stock and shares of stock . . . owned and held by me . . . to wit: 265 shares; . . . hereby cancelling and annulling any previous location or locations of said water stock upon said lands or any part thereof, made, or attempted to be made, for or by me or in my behalf. And I hereby authorize and empower you to issue to me in my name a certificate of stock for two hundred sixty-five shares of the capital stock of said Hallwood Irrigation Company in lieu of the certificates of stock in said company now held by me, and I do hereby make the said water stock appurtenant to the lands owned by me (describing the 550 acres first mentioned). . . . And I hereby tender and offer to surrender for cancellation the stock certificates now held by me, . . . upon your delivering to me a certificate of stock for an equal number of shares of the capital stock of said Hallwood Irrigation Company, properly executed to show the location of said stock and the water right connected therewith, upon and as appurtenant to the above described real property."

The defendant refused to issue certificates of stock to Smith upon the terms proposed by him in the foregoing communication, and the certificates theretofore issued to him have never been canceled, nor have other certificates been issued in lieu thereof. The defendant derives no profit from its operations, but furnishes water to its stockholders at cost, the expenses thereof being provided by assessments upon the capital stock. All assessments upon the Smith stock have been paid. At all times herein mentioned the Smith lands have been farmed by a single tenant and the defendant has furnished him water for irrigation until May, 1922, when any further supply was refused, except on condition that the 265 shares of Smith stock be made appurtenant to some designated 265 acres of the land. Not less than 160 acres of the Smith lands nor more than 200 acres thereof

have been supplied with water during any one year, but all of such lands have received water from defendant at some time since its organization.

On the twenty-sixth day of May, 1916, by three grant, bargain, and sale deeds, in the usual form, W. D. Smith conveyed 160 acres of the aforesaid lands to plaintiffs. No reference was made therein to any shares of capital stock or to any right to the use of water. These deeds had not been recorded up to the time of the trial. Smith died in December, 1917. In the year 1920 a special administrator of his estate was appointed, but no further proceedings have been had in the administration thereof. It is conceded that the title to the 265 shares of capital stock owned by him is in his estate unless a part thereof passed to plaintiffs by the aforesaid deeds as appurtenant to the lands thereby conveyed. Among other facts the court found:

"That prior to the 16th day of October, 1913, neither the directors nor stockholders of said corporation took any action of any kind to make the water so used by said stockholders appurtenant to the land of said stockholders, or any thereof, and permitted water to be used by said stockholders on any part or all the land owned by stockholders as said stockholders saw fit to use it; . . . that said W. D. Smith in his lifetime did not comply with the provisions . . . of said by-laws as amended on the 16th day of October, 1913; . . . That the conveyance of the said three above described tracts of land did not transfer the said stock of W. D. Smith, or any part thereof, and neither the said stock nor the water of said company nor any thereof became appurtenant to the said three tracts of land so conveyed or either or any of them; that the plaintiffs are not stockholders of said corporation."

Respondent has never denied the right of W. D. Smith, or his successors in interest, to water for the irrigation of any 265 acres of the Smith land to which the owner of the 265 shares of capital stock may cause the same to become appurtenant, but it is insisted that it would be an injustice to permit a shifting use of the water over the 550 acres, when other stockholders are limited to a designated acreage not exceeding the number of shares of stock owned by them. The soundness of this contention is manifest. But regard-

less of any question of injustice, the plaintiffs have not shown themselves to be entitled to water from defendant's system. Clearly the Smith stock was not made appurtenant to any of his lands under the provisions of the amended by-laws and those of section 324 of the Civil Code. Appellants contend that they have acquired a right to the continued use of water under the provisions of section 552 of the Civil Code. That section is not applicable, however, because it is limited to "any corporation" which "furnishes water to irrigate lands which said corporation has sold." The defendant has sold no lands. [1] Whether or not, then, Smith's stock became appurtenant to his land was a question of fact to be determined by the trial court from the acts of himself and the defendant and the manner in which water was furnished and used upon the Smith lands and those of other stockholders. (*Estate of Thomas*, 147 Cal. 236, 240 [81 Pac. 539]; Wiel on Water Rights, 3d ed., sec. 550.) It cannot be said that the evidence is insufficient to justify the court in finding as a fact that the Smith stock did not become appurtenant to the lands of plaintiffs. It follows that such stock is personal property, and, therefore, did not pass to plaintiffs by the mere conveyance to them of their lands. It is not necessary to consider what rights the owners of the Smith stock may have to the use of water or on what lands the same may be used. It may be surmised from the evidence that some of the plaintiffs are heirs of W. D. Smith. There is nothing, however, to indicate who all the heirs are or the proportions of the Smith estate to which they are respectively entitled.

[2] Appellants contend that they have acquired a prescriptive right to the use of the water claimed by them. Their complaint is based upon their alleged right to the use of water as stockholders, on the theory that a proportionate share of the Smith stock is appurtenant to their lands. The evidence does not show a hostile or adverse use of water by the tenant of plaintiffs, but rather a permissive use. It does not appear whether water was used continuously upon plaintiffs' lands for a period of five years. The area of 160 to 200 acres of the Smith lands irrigated each year may not have been the same acreage during any two successive years. In other particulars the evidence is insufficient to

establish a prescriptive right in plaintiffs, but the foregoing suggestions show that plaintiffs' contention is without merit.

The judgment is affirmed.

Plummer, J., and Burroughs, J., *pro tem.*, concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court of August 23, 1924, and the following opinion then rendered thereon:

THE COURT.—The petition for a transfer and hearing by this court after decision of the district court of appeal is denied. In view of the decision in the case of *Merrill* v. *Southside Irr. Co.*, 112 Cal. 426, 434 [44 Pac. 720], we cannot approve the construction placed in the opinion of that court upon section 552 of the Civil Code, but we do not deem that interpretation essential to the validity of the conclusion reached by that court. **[3]** It may be conceded that in 1913 appellants' grantor, W. D. Smith, was seised of a water right which was appurtenant to his entire tract of 550 acres, and which constituted a servitude upon the works and system of the defendant company. But when he attended the stockholders' meeting of October, 1913, and there voted, either in person or by proxy, for the adoption of the amendment to the by-laws and articles of incorporation he thereby in effect entered into a contract with his fellow-stockholders and with the corporation to the effect that his water right should thereafter be subject to the limitations and conditions set forth in said amended by-laws and articles of incorporation. **[4]** The like agreements on the part of his fellow-stockholders and the corporation afforded sufficient consideration to support such contract, and the same was not unreasonable or against public policy. (*Riverside Land Co.* v. *Jarvis*, 174 Cal. 318 [163 Pac. 54].) We are not here concerned with the question of the effect of said amendments upon the rights of stockholders who did not participate in the adoption thereof or consent thereto. The contract so entered into was binding upon Smith and is equally binding upon appellants who are claiming here as his successors in interest and privies. They are estopped thereby to claim the benefits of section 552 of the Civil Code except upon the

performance of the conditions of said contract. As pointed out in the opinion, the respondent has always stood ready to furnish the water claimed by them upon the performance of said conditions.