Filed 4/21/26  Pongs v. City of Riverside CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CARL PONGS, | D085800 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVR12301051) |
| CITY OF RIVERSIDE, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed.

Tyler Law and Nathan R. Klein for Plaintiff and Appellant.

Rebecca McKee-Reimbold, Interim City Attorney, and Anthony Beaumon, Deputy City Attorney, for Defendant and Respondent.


Carl Pongs appeals the judgment in favor of the City of Riverside (the City) in his action for quiet title, breach of contract, and declaratory relief concerning shares of stock in a company that provides irrigation water to shareholders who own properties in a designated area.  Pongs's theory is that he is the rightful owner of the shares because the shares were appurtenant to

lands he bought and the prior owners' transfers of the shares to the City were void. The superior court rejected that theory and entered judgment for the City after sustaining its demurrer to Pongs's second amended complaint without leave to amend. We affirm.

## I.

## BACKGROUND

A. *Facts*

The facts summarized below are taken from the allegations of the operative, second amended complaint and its attachments, which we take as true for purposes of this appeal. (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1132, fn. 1.)

Pongs owns two parcels of land in the City of Riverside, one on Harrison Street and the other on Monroe Street. When Pongs acquired the lands, each deed stated that all water rights transferred with the land.

The lands Pongs owns are within the area to which Gage Canal Company (Gage) provides a certain amount of irrigation water each year to landowners for each share of stock held in Gage. The rates Gage charges are lower than those charged by public utilities. Under Gage's bylaws, "Stock shall be issued on the basis of two (2) shares for each acre to owners of land within [Gage']s service area, and provided the place of use as approved by [Gage] is first designated on the certificate of stock so issued. The water right represented by such stock shall be located on the lands described on said certificate until said shares are freed from the land so described." Under the bylaws, the Harrison Street property would be entitled to 21 shares, and the Monroe Street property would be entitled to four shares.

Gage's bylaws permit severance of shares from associated lands. "Stock may be so freed by execution and delivery to and in favor of [Gage] of a deed

2

from the owner of said land releasing and relinquishing said land from the right to receive water from [Gage] under said certificate." In 1984, Pongs's predecessors in interest to the Harrison Street land, Edward and Nancy Coughlin, purported to sell their shares to the City, but they neither signed the back of the stock certificate nor recorded a deed freeing the shares from the land. In 1976, Pongs's predecessor in interest to the Monroe Street land, Joan Irving, purported to sell her shares to the City, but she neither properly endorsed the certificate in favor of the City nor recorded a deed freeing the shares from the land.

Pongs has been a member of Gage's board of directors since 2019 and owns one share of Gage stock, which is not associated with the lands he owns on Harrison Street and Monroe Street. When Pongs asked Gage to provide water to those lands, it denied the request on the ground the City now holds the shares once associated with them.

B.  *Proceedings*

On March 2, 2023, Pongs, on behalf of himself and others similarly situated, sued the City to recover the Gage shares formerly associated with their lands. The trial court sustained with leave to amend the City's demurrers to the original and first amended complaints. Pongs then filed the operative, second amended complaint. The gist of that pleading is that the City wrongfully possesses the Gage shares formerly associated with his lands and those of the putative class members because the City did not acquire them in the exclusive manner provided by Gage's bylaws. Pongs asserted causes of action for quiet title, breach of contract (Gage's bylaws), breach of the implied covenant of good faith and fair dealing, and declaratory relief. He prayed for a judgment: (1) quieting title to the Gage shares in him and the other putative class members; (2) restoring the shares to him and the other

3

putative class members; (3) declaring that severing shares from the associated land requires strict compliance with Gage's bylaws and may not be accomplished by paying delinquent assessments on behalf of shareholders; and (4) permanently enjoining the City from acquiring Gage shares by paying delinquent assessments on behalf of shareholders.

The City demurred on the grounds the second amended complaint was barred by statutes of limitations, was ambiguous, and failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subds. (e), (f).) The City argued the longest potentially applicable limitations period was five years for recovery of real property (*id.*, § 318), and more than five years had elapsed since the City acquired the Gage shares from Pongs's predecessors in interest in 1976 and 1984. The City argued Pongs had not stated a cause of action for quiet title, because he did not sufficiently allege that he ever owned the Gage shares formerly associated with the Harrison Street and Monroe Street lands or that the City's acquisition of those shares was wrongful. The City attacked the count for breach of contract based on violation of Gage's bylaws for lack of privity and insufficient allegations of violation. It challenged the count for breach of the implied covenant of good faith and fair dealing on the grounds that it merely duplicated the count for breach of contract and that there was no contract to support implied duties to deal fairly and in good faith. Finally, the City argued Pongs had not adequately pleaded an actual controversy that could justify declaratory relief.

Pongs opposed the demurrer. He argued no limitations period had run on his quiet title claim because he was in possession of the lands associated with the shares of Gage stock he sought to recover from the City. Pongs argued the four-year limitations period for breach of contract (Code Civ. Proc., § 337, subd. (a)) had not expired because he did not discover the breach

4

of Gage's bylaws until late 2020. As to the quiet title claim, Pongs contended he adequately alleged his ownership of the shares of the Gage stock at issue by alleging ownership of the lands to which the shares were originally attached and from which they were never freed in the only legal manner possible (i.e., in accordance with Gage's bylaws). As to the contract-based claims, Pongs argued that Gage's bylaws constitute a contract between him and the City as shareholders, and the City breached the contract by acquiring shares in a manner other than that specified in the bylaws. As for declaratory relief, Pongs argued he and the City had a ripe controversy over possession of shares of Gage stock. He asked the trial court to overrule the demurrer or, alternatively, to sustain it with leave to amend.

The trial court held a hearing on the demurrer and later issued a minute order. The court determined the second amended complaint contained no new facts that would cure the defects the court had identified in its order sustaining the City's demurrer to the first amended complaint. In the prior order, the court ruled the quiet title claim failed to state a cause of action because Pongs had not alleged that he held Gage shares appurtenant to the Harrison Street and Monroe Street lands when he acquired them or that the City could not have acquired those shares lawfully.[1] In the prior order, the court also ruled Pongs had not sufficiently alleged a violation of the Gage bylaws that constituted a breach of contract or the existence of an actual controversy that would support declaratory relief. Based on the reasoning of its prior order, the court sustained the demurrer to the second

---

[1] The trial court cited Corporations Code section 14303, which provides that upon delinquency in payment of assessments, water company shares that are appurtenant to lands "may be sold and transferred without those lands as if not appurtenant thereto" or "may be forfeited to the corporation."

amended complaint without leave to amend.  A judgment against Pongs and in favor of the City followed.

## II.

## DISCUSSION

Pongs complains the trial court erroneously sustained the City's demurrer by failing to accept his factual allegations as true and by failing to give him the benefit of reasonable inferences from those allegations.  When the allegations are accepted as true and reasonable inferences are drawn in his favor, Pongs contends the allegations suffice to state causes of action for quiet title, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.  Pongs complains the court abused its discretion by denying him leave to amend so that he could add factual allegations to cure any deficiencies in his pleading.  He also argues his quiet title and contract-based claims are not barred by any statutes of limitations.  Pongs asks us to reverse the judgment and to direct the trial court to overrule the demurrer or to sustain it with leave to amend.

A.  *Standard of Review*

We review rulings on demurrers de novo.  (*Hamilton v. Green* (2023) 98 Cal.App.5th 417, 423.)  We accept as true the material facts alleged in the complaint and those arising by reasonable implication, but not contentions, deductions, or conclusion of fact or law.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Young v. Gannon* (2002) 97 Cal.App.4th 209, 220.)  We give the complaint a reasonable construction by reading it as a whole and its parts in context and determine whether it states facts sufficient to constitute a cause of action.  (*Blank*, at p. 318.)  We review the denial of leave to amend for abuse of discretion.  (*Feliz v. County of Orange* (2023) 91 Cal.App.5th 927, 933.)  If there is a reasonable possibility that amendment can cure the

6

pleading defect, discretion has been abused, and we reverse. (*Blank*, at p. 318.) If there is no such possibility, discretion has not been abused, and we affirm. (*Ibid.*) The plaintiff has the burden to show how amendment will cure the pleading defect. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

B.    *Quiet Title Claim*

We begin with Pongs's cause of action for quiet title. Such a claim seeks "to establish title against adverse claims to real or personal property or any interest therein." (Code Civ. Proc., § 760.020, subd. (a).) The shares of Gage stock at issue are personal property (*Wheat v. Thomas* (1930) 209 Cal. 306, 315; *Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 763) and may be the subject of a quiet title action (*Locke v. Yorba Irrigation Co.* (1950) 35 Cal.2d 205, 206). An essential element Pongs must plead to state a cause of action is that he has title to (i.e., ownership of) the shares. (Code Civ. Proc., § 761.020, subd. (b); *Lucas v. Sweet* (1956) 47 Cal.2d 20, 22; *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1195.) He did not do so.

Pongs nowhere alleged he now owns or ever owned any shares of Gage stock that entitle him to delivery of water at his land on Harrison Street or Monroe Street. He did not allege that when he acquired those lands, he also acquired Gage shares entitling him to delivery of irrigation water on those lands. Pongs alleged he "is the holder of a single share of Gage stock, *which is not tied, appurtenant to, or in any way associated with the real property he owns*." (Italics added.) He did not attach to the second amended complaint a copy of his stock certificate, but he did attach a copy of a certificate registered to third parties that entitles them to receive irrigation water at the property described in the certificate. Pongs further alleged he "*should be* [a] shareholder[ ] in Gage" entitled to delivery of irrigation water based on his ownership of lands inside Gage's service area, but the City "wrongfully

7

acquired" the shares formerly associated with those lands from prior owners by not following the method for transferring the shares prescribed in Gage's bylaws. (Italics added.) Even were we to accept Pongs's allegations as true, they at most suggest a defect in the City's title. "But it is well-settled law that in an action to quiet title plaintiff cannot prevail because of the weakness of the title of the defendant therein, but that plaintiff's success in such an action must depend upon the strength of his own title. In other words, plaintiff must establish clear title in himself before he may be permitted to prevail because of alleged possible defects in the title of his adversary." (*Denman v. Smith* (1939) 14 Cal.2d 752, 758.)

Pongs argues he sufficiently established title for pleading purposes by alleging that he owns lands to which shares of Gage stock are "appurtenant," that the only way to sever the shares from the lands is by deed to Gage, and that he has searched for but found no such recorded deed. He relies on the following provision in Gage's bylaws: "The water right represented by such stock shall be located on the lands described on said certificate until said shares are freed from the land so described. Stock may be so freed by execution and delivery to and in favor of [Gage] of a deed from the owner of said land releasing and relinquishing said land from the right to receive water from [Gage] under said certificate." Pongs reads this provision as prescribing the exclusive method to sever the stock from the land and argues that because his reading is reasonable the trial court had to accept it when the court ruled on the City's demurrer. (See, e.g., *Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [demurrer admits any pleaded meaning to which document attached to complaint is reasonably susceptible]; *Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 [same].) He contends that due to the City's failure to use that method to

8

acquire the shares of Gage stock from his predecessors in interest, the transfers are "void" and the "shares are part of his bundle of property rights." According to Pongs, the shares "are his simply by owning his real properties," and "[i]t is not more complicated than that." We are not persuaded.

Pongs's argument proceeds from the false premise that the shares of Gage stock at issue were "appurtenant" to the lands he now owns on Harrison and Monroe Streets and could be transferred only with those lands. A water right or interest is appurtenant to land when it "is attached to land" (*Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 255) and "is by right used with the land for its benefit" (Civ. Code, § 662). Shares of stock in a water company like Gage may be "made appurtenant to certain lands" and "transferable only with such lands." (*Consol. Peoples D. Co. v. Foothill D. Co.* (1928) 205 Cal. 54, 63.) But such shares "are not presumptively appurtenant to land" (*Bank of Visalia v. Smith* (1905) 146 Cal. 398, 400) and "do not pass upon a conveyance of land unless they are appurtenant thereto" (*Wheat v. Thomas, supra*, 209 Cal. at p. 315). "[T]hey may become appurtenant by the adoption of appropriate provisions in the by-laws of the water company." (*Ibid.*) For example, a provision stating shares are " 'transferable only with the land to which they are attached' " (*Riverside Land Co. v. Jarvis* (1917) 174 Cal. 316, 319) or shares " 'shall be appurtenant to the lands for which they are issued' " and " 'shall be transferable only with said lands and shall pass as appurtenant thereto' " (*Smith v. Hallwood Irr. Co.* (1924) 67 Cal.App. 777, 779) would make the shares appurtenant to the land upon recording of the bylaws with the recorder of the county where the land is located (Corp. Code, § 14300). "[O]ne claiming that they are appurtenant, is required to prove it." (*Wheat v. Thomas, supra*, at p. 315.) Pongs has not done so.

9

The provision of Gage's bylaws Pongs relies on prescribes a method for shares to be "freed" from the land described in the stock certificate "by execution and delivery to and in favor of [Gage] of a deed from the owner of said land releasing and relinquishing said land from the right to receive water from [Gage] under said certificate." Under Pongs's reading, that provision prescribes the exclusive method for freeing Gage shares from the lands described in the certificates. His reading, however, does not lead to the conclusion that the City's failure to follow the prescribed method when it acquired the shares for the lands on Harrison and Monroe Streets from his predecessors in interest makes him, as the current owner of those lands, the owner of the shares. The provision limits the way the water right represented by the Gage stock certificate may be severed from the land described in the certificate; it does not restrict the right of the owner of the Gage shares to sell them separately from the land. Absent such a restriction on alienability, Gage shares are "transferable by the indorsement of the owner and delivery of the certificate" (*Bank of Visalia v. Smith, supra*, 146 Cal. at p. 403) and do not pass from grantors to grantees "by the mere conveyance to them of their lands" (*Smith v. Hallwood Irr. Co., supra*, 67 Cal.App. at p. 782). Thus, were we to accept Pongs's contention that the provision in Gage's bylaws sets out the exclusive way to free shares from the land described in the stock certificate, the City could still have acquired shares from his predecessors in interest; but the shares, not having been freed from the lands as prescribed by the bylaws, would entitle the City to receive irrigation water on lands now owned by Pongs. Although such shares might have little or no value to the City, the pertinent point is that under his reading of the bylaws the owner of the shares would be the City, not Pongs.

10

Pongs fares no better under his related contention that his predecessors in interest did not properly transfer their Gage shares to the City. He alleges the Coughlins neither signed the certificate for the shares entitling them to delivery of water at the Harrison Street land nor recorded a deed freeing the shares from the land. He alleges Irving signed the certificate for the shares entitling her to delivery of water at the Monroe Street land, but she did not date the certificate, have it witnessed, or record a deed freeing the shares from the land. Pongs argues these defects rendered the transactions "void" and require them to be "unwound." When a transfer is void, title remains in the transferor as if no transfer had been attempted. (*First Nat. Bank of L.A. v. Maxwell* (1899) 123 Cal. 360, 371; *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361–1362.) Unwinding the transactions at issue in this case would transfer ownership of the Gage shares at issue from the City to his predecessors in interest (or, if they have died, to their estates), not to Pongs. But in a quiet title action, " '[t]he plaintiff may recover only upon the strength of his or her own title . . . and not upon the weakness of the defendant's title.' " (*Thompson v. Ioane, supra*, 11 Cal.App.5th at p. 1195.) Even after unwinding, Pongs lacks the necessary title.

For the foregoing reasons, we conclude Pongs did not sufficiently allege title to the shares of Gage stock formerly associated with the lands he now owns on Harrison and Monroe Streets. "[A]bsent an interest in the property, a party has no standing to ask the court to quiet title in the property." (*Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 59; see *Wright v. City of Morro Bay* (2006) 144 Cal.App.4th 767, 773 [plaintiff who fails to show any interest in property to which he claims title " 'must fail altogether' "].) Hence, the trial court correctly sustained the City's demurrer to Pongs's cause of action

11

for quiet title. Our conclusion makes it unnecessary for us to address the parties' contentions concerning the statute of limitations.

C.    *Contract-based Claims*

We next consider Pongs's causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. In both counts, Pongs alleged: (1) Gage's "bylaws constitute a contract by and between Gage and the various shareholders," including him and the City; (2) he complied with his obligations under the bylaws or such obligations were excused; (3) the City breached the bylaws when it acquired the Gage shares from his predecessors in interest without following the method prescribed for freeing the water rights evidenced by those shares from the associated lands; and (4) the breach caused him to "los[e] the benefit of holding shares in Gage." Pongs prayed for "specific performance in the form of restoration of the shares from the City to [him]." Neither count stated facts sufficient to constitute a cause of action.

An essential element of a cause of action for breach of contract is the existence of a contract between the parties. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; *Roth v. Malson* (1998) 67 Cal.App.4th 552, 557; *Palmer v. Harlow* (1921) 52 Cal.App. 758, 763.) As the contract between him and the City, Pongs relies on Gage's bylaws, which constitute a contract between Gage and its shareholders and among the shareholders. (*De Boni Corp. v. Del Norte Water Co.* (2011) 200 Cal.App.4th 1163, 1170; *Casady v. Modern Metal etc. Mfg. Co.* (1961) 188 Cal.App.2d 728, 732–733.) Pongs, however, did not become a Gage shareholder until 2019, decades after the City allegedly violated the bylaws when it acquired the Gage shares from his predecessors in interest in 1976 and 1984 without complying with the method the bylaws prescribe for freeing the shares from the lands.

12

Generally, only a party to a contract when a breach occurred has standing to enforce it and to sue for breach. (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 911; *Bleavins v. Demarest* (2011) 196 Cal.App.4th 1533, 1542; *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1092.) "[O]nly the parties at the time of breach have existing contractual promises to perform that they may fail to fulfill." (*Continental Aerospace Technologies v. I.T.F. Group* (S.D.Ala. 2023) 691 F.Supp.3d 1358, 1366.) Without the required contractual relationship with the City at the time of the alleged breaches, Pongs has no claim for breach of contract.

The absence of that relationship also defeats the cause of action for breach of the implied covenant of good faith and fair dealing. " 'The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.' " (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1599.) "There is no obligation to deal fairly or in good faith absent an existing contract." (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1032.) "Without a contractual relationship, [Pongs] cannot state a cause of action for breach of the implied covenant." (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49.)

We conclude the trial court properly sustained the City's demurrer to Pongs's contract-based claims. That conclusion makes it unnecessary for us to address the parties' contentions concerning the statute of limitations.

D.   *Declaratory Relief Claim*

As a fourth and final cause of action, Pongs repeated his allegations that the City acquired the Gage shares from his predecessors in interest in

13

violation of Gage's bylaws, and he sought a declaration of the parties' rights and obligations as to the shares and the bylaws. In an action for declaratory relief, a court may sustain a demurrer without leave to amend when it appears from all the circumstances such relief "is not necessary or proper." (Code Civ. Proc., § 1061; *DeLaura v. Beckett* (2006) 137 Cal.App.4th 542, 545.) Pongs's declaratory relief claim is based on the same facts underlying his claims for quiet title, breach of contract, and breach of the implied covenant of good faith and fair dealing. Where, as here, a court properly sustains demurrers to other claims, it also properly sustains a demurrer to a declaratory relief claim that is wholly derivative of the others. (*City of Lancaster v. Netflix, Inc.* (2024) 99 Cal.App.5th 1093, 1114; *Lauckhart v. El Macero Homeowners Assn.* (2023) 92 Cal.App.5th 889, 909; *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173.)

E.    *Leave to Amend*

As an alternative to reversal with directions to the trial court to overrule the City's demurrer, Pongs asks for reversal with directions to sustain the demurrer with leave to amend. The only facts he offers to add concern (1) his use and possession of the lands on Harrison and Monroe Streets to show the limitations period has not expired on his quiet title claim and (2) delayed discovery to show the limitations period has not expired on his contract-based claims. But the trial court did not base its ruling on statutes of limitations, and neither do we. Pongs does not specify any facts he can allege to cure the defects the trial court and this court have identified in his second amended complaint. Hence, he has not sustained his burden to show the trial court abused its discretion in denying leave to amend. (*Hendy v. Losse, supra*, 54 Cal.3d at p. 742; *Jimenez v. Mrs. Gooch's Natural Food Markets, Inc.* (2023) 95 Cal.App.5th 645, 653, 658–659.)

14

III.

DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J

15